# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| BERN UNLIMITED, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | 11-12278-FDS |
| ) | |
| THE BURTON CORPORATION, ) | |
| et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER ON
## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**SAYLOR, J.**

This is a dispute between several companies that sell sports helmets involving allegations of trade-dress infringement and unfair competition. Plaintiff Bern Unlimited, Inc., has brought suit against five other makers of biking, skating, snow, and water sporting helmets. Bern contends that the distinctive look of its own helmets constitutes a trade dress, and that defendants are manufacturing and selling confusingly similar helmets, thereby misleading the public. Bern seeks both monetary and injunctive relief.

Defendants have moved for summary judgment. For the reasons set forth below, the motion will be denied.[1]

---

[1] Defendants have also moved for a stay of discovery pending the Court's ruling on the motion for summary judgment. This motion will be dismissed as moot.

I.    **Background**

    A.    **Factual Background**

Bern Unlimited, Inc., is a manufacturer of helmets for biking, skating, snow, and water sports. (Pl. SMF ¶ 6). In January 2006, Bern introduced the "Baker" line of snow helmets. (Pl. SMF ¶ 6). The "Baker" helmet was a commercial success for Bern, and led the company to introduce additional helmet lines featuring the same elements, including the "Watts," "Lenox," and "Muse" lines. (Compl. ¶¶ 10-11; Def. SMF ¶ 10).

The complaint refers to two distinctly identifiable design elements to these helmets: first, the "rounded profile of the helmet, which is designed to follow the shape of the wearer's head"; and second, the distinctive visor. (Compl. ¶ 9).[2] Bern also refers to the former feature as the helmet's "chine line," which the company claims "fits around the wearer's head and provides better fit and protection than traditional models . . . ." (Pl. SMF. ¶¶ 28, 29).[3] Taken together, Bern refers to these elements as the "Bern Trade Dress." (Def. SMF ¶ 9).

According to Bern, the company initially expected the helmet's visor to provide wearers with a measure of protection from the sun. (Pl. SMF ¶ 16; Leedom Dec. ¶ 9). However, the company contends that the feature turned out to have little utility. (Pl. SMF ¶ 16).

---

[2] Bern describes the distinctive features of the visor in its Statement of Facts, stating that the design "include[s] a narrow visor or brim that is part of the shell and gently transitions from the helmet's front edge out a short distance from the face" before ending. (Pl. SMF ¶ 9).

[3] In their reply brief, defendants contend that the "chine line" discussed in Bern's opposition motion and statement of material facts was not alleged in the complaint to be part of the trade dress, and that Bern has not alleged that any of defendant's products infringe this element. Based on Bern's description of the "chine line," the Court understands it to be a further means of describing the rounded profile of the helmet described in the complaint, and not as a new or separate element of the trade dress.

The record contains extensive references to advertisements for Bern's helmets. Many of these advertisements highlight the product's style and appearance. One advertisement includes describes Bern's helmet as "one of the few stylish alternatives," and "[t]he one bike helmet that won't make you look like a dork." (Pl. SMF, Ex. G). Bern's website quotes Olympic skier Seth Westcott as saying, "Bern created the most stylish helmet in the game. I have had a pro-model in the Baker for four years because it fits and looks better than any of the others." (Key Dec. ¶ 2 and Ex. A). The website also references the helmet's popularity with professional athletes, stating that "[r]iders like Megh Pugh and Ashley Battersby like the Muse for it[s] versatility. Who says a helmet can't be your favorite accessory?" (Key Dec. ¶ 7 and Ex. F).

Other advertisements, however, highlight the functionality of the helmet's features. In 2009, Bern referred to the helmets as having the "world's first functional visor lid." (Key Dec. ¶ 8, 9, Ex. G, and Ex. H). More recently, Bern has published advertisements that refer to the functional advantages of the visor. In describing the Watts helmet, Bern's website states that "[w]ith Bern's patented visor shape, the Watts gives skaters a much needed brim in sunny locales and comes in handy during rainy day sessions as well." (Key Decl. ¶ 3 and Ex. B). Other product descriptions advertise the helmet by touting its ability to protect against the elements, indicating that "[s]un, rain, and snow—you name it—the Watts defends against it." (Key Dec. ¶ 4 and Ex. C).[4]

Bern's advertisements and product descriptions have also described benefits of the helmet's shape. Bern's website indicates that "[t]he lid ergonomically fits around your head

---

[4] In its response to defendants' statement of material facts, Bern disputes various of these advertising statements as "out of context" and "not representative." Bern does not, however, appear to dispute that the advertisements are real, or that they included the quoted statements. The Court will accordingly treat Bern's response as an admission that the advertisements are authentic and that the statements were made.

instead of on top of it providing full protection." (Key Decl. ¶ 10 and Ex. I). Another descriptor explains that "Bern's mission is superior fit," and states that the helmet "fits around your head instead of on top of it." (Haggerty Decl., Ex. B).

All five defendants are also involved in the business of designing and selling sports helmets. Bern has accused each company of selling helmets with designs that are confusingly similar to Bern's design. (Compl. ¶¶ 13-18). The disputed helmet lines are Easton-Bell's "Giro Surface" helmet, Burton's "Red Mutiny" helmet, Smith's "Gage" helmet, Amer's "Ghost" and "Brigade Audio" helmets, and Vans's "Pro-Tec Riot" helmet. (Compl. ¶¶ 13-17).

### B.     Procedural Background

Bern initially brought suit for design patent infringement against the Burton Corporation on December 20, 2011. On April 27, 2012, Bern filed an amended complaint against all five current defendants. The complaint alleges trade-dress infringement pursuant to 15 U.S.C. § 1125(a) and Massachusetts common law, trade-dress dilution pursuant to 15 U.S.C. § 1125(c) and Mass Gen. Laws ch. 110H, §13, and unfair competition pursuant to Mass. Gen. Laws ch. 93A.

Defendants have moved for summary judgment on the grounds that Bern cannot prove the non-functionality of its asserted trade dress, and therefore cannot prevail.

## II.     Standard of Review

The role of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Mesnick v. General Elec. Co.*, 950 F.2d 816, 822 (1st Cir. 1991) (internal quotations omitted). Summary judgment is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is

no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant . . . would permit a rational fact finder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). In evaluating a summary judgment motion, the Court indulges all reasonable inferences in favor of the non-moving party. *O'Connor v. Steeves*, 994 F.2d 905, 907 (1st Cir. 1993). When "a properly supported motion for summary judgment is made, the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). The non-moving party may not simply "rest upon mere allegation or denials of his pleading," but instead must "present affirmative evidence." *Id*. at 256-57.

**III.    Analysis**

    **A.    Federal Trade-Dress Claims**

        **1.    Legal Standard**

Plaintiff has brought both federal and state trade-dress claims. The federal claims are brought pursuant to the Lanham Act, which provides protection against "trade dress" infringement and dilution. 15 U.S.C. § 1125(a) & 1125(c).

"Trade dress" is defined as "the design and appearance of a product together with the elements making up the overall image that serves to identify the product presented to the consumer." *Yankee Candle Co. v. Bridgewater Candle Co.*, LLC, 259 F.3d 25, 37-38 (1st Cir. 2001). Trade-dress protection is intended to protect "that which identifies a product's source." *I.P. Lund Trading ApS v. Kohler Co.*, 163 F.3d 27, 35 (1st Cir. 1998).

In order for trade-dress to be protected, a plaintiff must prove that the dress is, among other things, non-functional. *Yankee Candle*, 259 F.3d at 38. Indeed, 15 U.S.C. § 1125(a)(3) (which addresses trade-dress infringement actions) and 15 U.S.C. § 1125(c)(4) (which addresses trade-dress dilution actions) expressly provide that the party who asserts trade-dress protection has the burden of proving that the claimed trade dress is not functional. 15 U.S.C. § 1125(a)(3) and (c)(4); *see also I.P. Lund*, 163 F.3d at 33, (stating that the burden "of showing non-functionality of a product for which trade dress protection is sought rests on the party seeking that protection.") The Supreme Court has stated that the non-functionality requirement is designed to "prevent[] trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful product feature." *Qualitex Co. v. Jacobson Prods. Co.*, 514 U.S. 159, 164 (1995).

Functionality is a question of fact that depends on the totality of the evidence. *See, e.g., Valu Eng'g, Inc. v. Rexnord Corp.*, 278 F.3d 1268, 1273 (Fed. Cir. 2002). On a motion for summary judgment, the party seeking trade-dress protection must come forward with "sufficient evidence to generate a trialworthy issue." *See Colt Defense LLC v. Bushmaster Firearms, Inc.*, 2005 WL 2293909, at *31 (D. Me. Sept. 20, 2005) (citing *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001)).

A trade dress is considered functional "if it is essential to the use or purpose of the article or if it affects the cost or quality of an article." *TrafFix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 32 (2001). A feature is also functional if its "exclusive use [] would put competitors at a significant non-reputation-related disadvantage." *Id*. In determining the functionality of a design, courts consider a number of factors. An often-cited list of factors

includes "(1) the existence of a utility patent disclosing the utilitarian advantages of the design; (2) advertising materials in which the originator of the design touts the design's utilitarian advantages; (3) the availability to competitors of functionally equivalent designs; and (4) facts indicating that the design results in a comparatively simple or cheap method of manufacturing the product." *Valu Eng'g, Inc. v. Rexnord Corp.*, 278 F.3d 1268, 1274 (Fed. Cir. 2002) (citing *In re Morton-Norwich Products, Inc.*, 671 F.2d 1332 (C.C.P.A. 1982)).

### 2. Functionality of Bern's Claimed Trade Dress

Defendants contend that no reasonable jury could find that the rounded profile and visor of Bern's helmets are not functional. In particular, defendants contend that both features are intended to enhance protection, which is "essential to the use or purpose" of a helmet. *TrafFix*, 532 U.S. at 32.

Defendants have unquestionably presented evidence that plaintiff has published advertisements referring to the functional benefits of the two features that plaintiff asserts constitute its trade dress. As to the rounded profile of the helmets, plaintiff's website advertises that, as a result of the shape, the "lid ergonomically fits around your head instead of on top of it providing full protection." (Key Decl. Ex. I). This language suggests a purpose to the helmet's shape other than aesthetic attractiveness; it suggests that the design of the helmet causes it to fit better and protect more fully. Similarly, plaintiff has advertised utilitarian benefits to the helmet's visor. Plaintiff's website indicates that helmets featuring the visor "give[] skaters a much needed brim in sunny locales and come in handy during rainy day sessions as well." (Key. Decl. Ex. B). In another advertisement, the website touts the helmet by saying "Sun, rain, and snow—you name it—the Watts defends against it." (Key Dec. ¶ 4 and Ex. C). Taken together,

these advertisements suggest that the claimed trade dress serves a functional purpose.

Nonetheless, based on the evidence before it, this Court cannot say as a matter of law that the claimed features of plaintiff's helmets are functional. In determining functionality, the question is whether the features comprising the asserted trade dress are "essential to the use or purpose of the article or [] affect [] the cost or quality of the article." *TrafFix Devices, Inc.*, 532 U.S. at 33. Because defendants have not presented any evidence that the features at issue in this case affect the cost or quality of the helmets, the focus of the Court's inquiry must be whether those features are essential to the use or purpose of the helmets.

Defendants have certainly presented some evidence indicating that the helmets' rounded profile and visor were designed to make the helmet work better. However, defendants' argument focuses entirely on a small number of advertisements, at least one of which has not been used in nearly four years. Plaintiff contests defendant's interpretation of these advertisements, and has at the very least raised a question of fact as to whether, for example, the visor could have been initially designed to be functional but later retained, despite a lack of functionality, for its aesthetic value.

Even if the court assumes that plaintiff has not sufficiently rebutted defendants' evidence concerning the functional claims in plaintiff's advertisements, summary judgment is nonetheless inappropriate. While the existence of advertising materials that refer to the functional benefits of a design feature is one of the much-cited "*Morton-Norwich* factors" considered to be relevant to the question of functionality, it is not the only such factor. Defendants have not cited any cases that lead this Court to believe that such advertising materials can, without more, establish functionality as a matter of law. Thus, although the content of plaintiff's advertisements bears

on the issue of functionality, it is not dispositive.

This is particularly true given that there is no undisputed evidence before the Court that would suggest that any of the other *"Morton-Norwich* factors" will also weigh in favor of the defendants. Plaintiff does not have, and has never applied for, any utility patent to cover the claimed features. Nor have defendants disputed plaintiff's assertion that the design features do not offer advantages in the ease or cost of manufacturing. As to the remaining factor, the availability of a functionally equivalent design, the parties vigorously dispute whether such a design exists.

Plaintiff's burden at summary judgment is not to rebut defendants' entire case, nor is it to prove its own by a preponderance of the evidence. Rather, "[i]n order to preclude summary judgment, the nonmoving party must submit sufficient evidence supporting the claimed factual dispute to require a choice between the parties' differing versions of the truth at trial." *Hasbro, Inc. v. Clue Computing, Inc.*, 66 F. Supp. 2d 117, 121 (D. Mass. 1999). Here, plaintiff has met that burden by putting forth evidence suggesting that other factors may tip the balance against a finding of functionality. There is a triable issue of fact as to the functionality of plaintiff's claimed trade dress.

Accordingly, defendants' motion for summary judgment will be denied as to both plaintiff's federal trade-dress claims.

### B.     State-Law Trade-Dress Claims

Plaintiff has also brought trade-dress claims pursuant to Massachusetts common law and to Mass. Gen. Laws ch. 110H, § 13. (Compl. ¶¶ 33-44). Although these claims are somewhat different from its federal law claims, they include the requirement that the claimed trade dress be

non-functional.

Accordingly, the analysis set forth above applies with equal force to the state-law claims, and defendant's motion for summary judgment as to those claims will be denied.

### C. Chapter 93A Claim

In addition to state and federal trade-dress claims, the complaint also alleges unfair competition in violation of Mass. Gen. Laws ch. 93A.

The chapter 93A claim is based on the same allegations as the trade-dress claims—namely, that defendants engaged in unfair competition and unfair or deceptive business practices by using and diluting plaintiff's distinctive trade dress. Defendants moved for summary judgment on this claim solely on the basis that, because the trade-dress features are functional, defendants have not engaged in any actionable conduct under chapter 93A. *See, e.g., Unleashed Doggie Day Care, LLC v. Petco Animal Supplies Sores, Inc.*, 2011 WL 6812642 (D. Mass. Dec. 28, 2011).

On that basis, defendants' motion for summary judgment will be denied. The Court takes no position as to whether defendants' conduct will ultimately be shown to be the type of "egregiously wrong" behavior typically required for a successful chapter 93A claim. *Massachusetts Sch. of Law at Andover, Inc. v. American Bar Ass'n*, 142 F.3d 26, 41 (1st Cir. 1998). Nor does the Court presume that the complained of conduct occurred "primarily and substantially within the Commonwealth," as the statute requires. Mass. Gen. Laws. ch 93A § 11.

Accordingly, defendants' motion for summary judgment will be denied as to the chapter 93A claim.

## IV.     Conclusion

For the foregoing reasons, defendant's motion for summary judgment is DENIED, and defendant's motion to stay discovery is DENIED as moot.

**So Ordered.**

|  |  |
|---|---|
|  | /s/ F. Dennis Saylor |
|  | F. Dennis Saylor IV |
| Dated: May 15, 2013 | United States District Judge |