_____
                                                    )
**BERN UNLIMITED, INC.,**                           )
                                                    )
     **Plaintiff,**        )
                                                    )    **Civil No.**
     **v.**                 )    **11-12278-FDS**
                                                    )
**THE BURTON CORPORATION;**                         )
**EASTON-BELL SPORTS, INC., now**                   )
**known as BRG SPORTS, INC.; SMITH**                )
**SPORT OPTICS, INC., d/b/a SMITH**                 )
**OPTICS, INC.; VANS, INC.; AMER**                  )
**SPORTS WINTER & OUTDOOR CO.;**                    )
**and K-2 CORPORATION,**                            )
                                                    )
     **Defendants.**        )
                                                    )
_____)

### MEMORANDUM AND ORDER ON PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' COUNTERCLAIMS, OR IN THE ALTERNATIVE, TO SEVER

**SAYLOR, J.**

This is a dispute between several companies that sell sports helmets involving alleged trade-dress infringement and unfair competition. Plaintiff Bern Unlimited, Inc., has brought suit against six other makers of biking, skating, snow, and water sporting helmets.[1] Bern contends that the distinctive look of its helmets constitutes a trade dress, and that defendants are manufacturing and selling confusingly similar helmets, thereby misleading the public. It seeks relief under both federal and state law.

Bern has amended its complaint three times, most recently on March 7, 2014. In their

---

[1] Plaintiff also brought claims against Dye Precision, Inc., who was voluntarily dismissed from the case on April 28, 2014.

answers to the third amended complaint, defendants Burton Corporation, Easton-Bell Sports, Inc., Smith Sport Optics, Inc., Vans, Inc., Amer Sports Winter & Outdoor Co., and K-2 Corporation brought, for the first time, counterclaims against plaintiff. Plaintiff has moved to strike the counterclaims, contending that leave of Court was required to assert the counterclaims and such leave should be denied on the grounds of undue delay and futility.

For the following reasons, the motion to strike will be granted in part and denied in part. The motion to sever will be denied without prejudice as to its renewal.

## I.  Background

### A.  Factual Background

The facts are summarized below as set forth in the third amended complaint and answers.

#### 1.  Allegations by Bern

Bern Unlimited, Inc., is a manufacturer of helmets for biking, skating, snow, and water sports. (Third Am. Compl. ¶ 11). In January 2006, Bern introduced the "Baker" line of snow helmets. (*Id.*). The "Baker" helmet was a commercial success for Bern, and led the company to introduce additional helmet lines featuring the same elements, including the "Watts," "Lenox," and "Muse" lines. (*Id.* ¶ 14).

The complaint refers to two distinctly identifiable design elements to these helmets: first, the "rounded profile of the helmet, which is designed to follow the shape of the wearer's head"; and second, "the distinctive visor." (*Id.* ¶ 11). Taken together, Bern refers to these elements as the "Bern Trade Dress." (*Id.*).

The Burton Corporation, Easton-Bell Sports, Inc., Smith Sport Optics, Inc., Amer Sports Winter & Outdoor Co., Vans, Inc., and K-2 Corporation are also involved in the business of

designing and selling sports helmets. (*Id.* ¶¶ 15-18, 20). Bern has accused those companies of selling helmets with designs that are confusingly similar to Bern's design. (*Id.* ¶ 21).

## 2.    Allegations by Counterclaimants

In December 2005, Bern began selling the "Baker" line of helmets. (Vans Countercl., Docket No. 166 at 11 ¶ 8).[2]

On January 19, 2007, Jonathan Baker filed an application for a patent on the "Baker" helmet from the United States Patent and Trademark Office. (*Id.*, Ex. A). The patent, United States Design Patent No. D572,865 S (the "'865 patent"), was issued on July 8, 2008. (*Id.* at 11 ¶ 9). During the application process, the PTO was not informed that Bern had begun selling the "Baker" helmet in 2005. (*Id.* at 11 ¶ 12).

In its marketing materials, Bern has promoted the fact that its helmets are covered by the '865 patent. According to the counterclaims, it did so in order to discourage retailers from buying the helmets of its competitors. (*Id.* at 12 ¶ 15). The patent itself appears in many of Bern's advertising catalogs. (*Id.* at 12 ¶ 13). Bern's advertising also claims that Bern was the first to invent a helmet with a visor. (*Id.* at 12-13 ¶ 16). Finally, Bern's advertising claims that the "Baker" helmets are the "first visor helmet offering a protective visor cover in the front," the "world's first functional visor lid," "the original," and the "INDUSTRY'S FIRST VISOR." (*Id.* at 13 ¶ 18). These statements, which the counterclaims allege are false, have resulted in increased sales for Bern and decreased sales for its competitors. (*Id.* at 12 ¶ 15). Bern allegedly made these statements knowing they were false. (*Id.* at 12 ¶ 15, 13-14 ¶ 21).

On December 20, 2011, Bern filed this lawsuit, alleging claims of infringement of the

---

[2] Because each defendant has made substantially similar allegations in their respective, separately filed counterclaims, the Court cites to Vans's filing.

'865 patent against Burton. On April 27, 2012, Bern dropped the claims of patent infringement and replaced them with claims of trade dress infringement.

On April 8, 2014, Jonathan Baker assigned the '865 patent to Bern. (Assignment, Docket No 196, Ex. 1). The assignment was retroactive to January 19, 2007. (*Id.*).

On April 11, Bern filed a statutory disclaimer of the '865 patent with the PTO under 25 U.S.C. § 253. (Caffrey Decl., Docket No. 183, Ex. 1). The PTO accepted the disclaimer on May 13, 2014. (Second Caffrey Decl., Docket No. 211, Ex. 1).

**B.**     **Procedural Background**

As noted, Bern initially brought suit for design-patent infringement against Burton on December 20, 2011. The original complaint alleged that Burton had infringed on the '865 patent. On April 27, 2012, Bern filed an amended complaint, adding five defendants and changing its claims from patent infringement to trademark infringement. Defendants did not assert any counterclaims in response.

On September 28, 2012, defendants moved for summary judgment on the ground that Bern could not prevail because it could not prove the non-functionality of its asserted trade dress. On May 15, 2013, the Court denied that motion.

On July 11, 2013, after obtaining leave of court, Bern filed a second amended complaint, adding two defendants. The second amended complaint alleged trade-dress infringement under 15 U.S.C. § 1125(a) and Massachusetts common law; trade-dress dilution under 15 U.S.C. § 1125(c) and Mass. Gen. Laws ch. 110H, § 13; and unfair competition under Mass. Gen. Laws ch. 93A. The second amendment complaint did not allege any claims of patent-law violations. Defendants again did not assert any counterclaims in response.

On March 7, 2014, again after obtaining leave of court, Bern filed a third amended complaint, adding additional allegedly infringing helmets introduced by defendants after the inception of the case.  On April 28, one defendant was voluntarily dismissed from the case.  The remaining named defendants are Burton, Easton-Bell, K-2, Smith, Vans, and Amer Sports.

On March 24, 2014, defendants filed answers to the third amended complaint.  For the first time, defendants asserted counterclaims with their answers.  With one partial exception, the counterclaims brought claims for (1) a declaratory judgment that the '865 patent is invalid, (2) a declaratory judgment that Bern cannot enforce the '865 patent because of its inequitable conduct, (3) false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a), (4) common-law unfair competition, and (5) unfair and deceptive trade practices in violation of Mass. Gen. Laws ch. 93A.[3]

On April 14, 2014, Bern filed a motion to strike the counterclaims or, in the alternative, to sever.  It contends that (1) defendants were required to seek leave from the Court to amend their answers to add new counterclaims; (2) the declaratory-judgment claims are moot because it disclaimed the '865 patent; and (3) the false advertising, unfair competition, and Chapter 93A counterclaims fail to state a claim upon which relief can be granted.

**II.**     **Analysis**

    **A.**     **Procedural Analysis**

The first question presented is procedural.  When a plaintiff, with leave of court, amends its complaint, may the defendant freely assert new counterclaims in its answer, or must it seek leave of court to do so?  The answer to that question is not provided, at least not directly, in the

---

[3] K-2 did not assert either of the declaratory-judgment claims or a common-law unfair-competition claim.

Federal Rules of Civil Procedure.

Under Rule 7, only certain kinds of "pleadings" are allowed, including "(1) a complaint; (2) an answer to a complaint; [and] (3) an answer to a counterclaim designated as a counterclaim." Fed. R. Civ. P. 7(a). Thus, under Rule 7, any counterclaim made by a defendant against a plaintiff must be made in the answer. *See id.* Under Rule 12, a defendant must ordinarily serve an answer (and assert any counterclaims) within 21 days after being served with the summons and complaint. Fed. R. Civ. P. 12(a)(1)(A).

Amendments to the pleadings are addressed in Rule 15. Under Rule 15(a), a party may amend a "pleading" without leave of court in certain relatively narrow circumstances.[4] "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Unless the court orders otherwise, "any required response to an amended pleading must be made within the time remaining to respond to the original pleading or within 14 days after service of the amended pleading, whichever is later." Fed. R. Civ. P. 15(a)(3).

Rule 15 thus requires that the plaintiff must normally obtain leave of court to amend its complaint. An amended complaint requires a "response"—either a motion under Rule 12 or a new (that is, amended) answer. Although the rule addresses *when* an answer to an amended complaint must be filed, it does not address whether the defendant is required to obtain leave of court if it is not simply filing a new answer, but also asserting new or amended counterclaims.

Courts have taken two general approaches to the issue. Under the so-called "moderate"

---

[4] A party may amend a pleading once as a matter of course within "21 days after serving it," or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (3), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1).

approach, "an amended response may be filed without leave only when the amended complaint

changes the theory or scope of the case, and then, the breadth of the changes in the amended

response must reflect the breadth of the changes in the amended complaint." *Virginia Innovation*

*Sciences, Inc. v. Samsung Electronics Co., Ltd.*, 2014 WL 1308699, at \*8 (E.D. Va. Mar. 31,

2014) (quoting *Elite Entm't, Inc. v. Khela Bros. Entm't*, 227 F.R.D. 444, 446 (E.D. Va. 2005)).[5]

Under the so-called "permissive" approach, "once a plaintiff amends a complaint, the defendant

always has the right to amend to bring new counterclaims, without regard to the scope of the

amendments." *Id.*, at \*5 (quoting *Elite Entm't*, 227 F.R.D. at 446).[6]

Some additional clarity was provided in 2009, when the Federal Rules of Civil Procedure

were amended to delete Rule 13(f). That rule formerly provided that "[w]hen a pleader fails to

set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice

requires, the pleader may by leave of court set up the counterclaim by amendment." Fed. R. Civ.

P. 13(f) (2007). The advisory committee note accompanying the change stated the following:

> Rule 13(f) is deleted as largely redundant and potentially misleading. An amendment to
> add a counterclaim will be governed by Rule 15. Rule 15(a)(1) permits some
> amendments to be made as a matter of course or with the opposing party's written
> consent. When the court's leave is required, the reasons described in Rule 13(f) for
> permitting amendment of a pleading to add an omitted counterclaim sound different from
> the general amendment standard in Rule 15(a)(2), but seem to be administered—as they
> should be—according to the same standard directing that leave should be freely given
> when justice so requires. The independent existence of Rule 13(f) has, however, created

---

[5] Under the "moderate" approach, under Rule 15(a)(3), "a party served with an amended pleading has the duty and the right only to 'respond' to the amendment or the changes in the amended pleading." *Id.* (quoting Fed. R. Civ. P. 15(a)(3)). That rule states that "any required *response* to an amended pleading must be made within the time remaining to *respond* to the original pleading or within 14 days after service of the amended pleading, whichever is later." Fed. R. Civ. P. 15(a)(3) (emphasis added). Arguably, Rule 15(a)(3) limits the scope of an answer to an amended complaint to a pleading that "responds" to the amended complaint. *See Virginia Innovation*, 2014 WL 1308699, at \*8-9.

[6] A third approach, the so-called "narrow" approach, is no longer valid after the abrogation of Rule 13(f) in 2009. *See Virginia Innovation*, 2014 WL 1308699, at \*7.

some uncertainty as to the availability of relation back of the amendment under Rule 15(c). Deletion of Rule 13(f) ensures that relation back is governed by the tests that apply to all other pleading amendments.

Fed. R. Civ. P. 13 advisory committee's note (2009) (internal citation omitted). It thus appears that the advisory committee takes the view that amendments to add counterclaims should be generally governed by Rule 15.

Neither the "permissive" nor the "mandatory" approach is entirely satisfactory. The "permissive" approach runs contrary to the advisory committee note and seems, at a minimum, to violate the spirit and purpose of Rule 15. The reason that leave is required to amend a complaint is so that the court will have an opportunity to deny amendments that might cause undue delay, result in undue prejudice, result in the assertion of new claims that are futile or are asserted in bad faith, or otherwise involve abuses of the legal process. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding that leave should be freely given "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith . . . , undue prejudice . . . , futility of amendment, etc."). Allowing a counterclaimant to assert entirely new counterclaims, at its option, whenever the complaint has been amended would mean that "claims that would otherwise be barred or precluded could be revived without cause." *Virginia Innovation*, 2014 WL 1308699, at *7 (quoting *E.E.O.C. v. Morgan Stanley & Co., Inc.*, 211 F.R.D. 225, 227 (S.D.N.Y. 2002)). It would also create an imbalanced, if not inequitable, situation where the plaintiff would be required to obtain leave to make amendments to its pleadings, but the defendant-counterclaimant would not.

Under the "moderate" approach, the Court must deal with the potentially difficult question of whether a counterclaim "responds" to an amended complaint or not. *See, e.g.*,

*Akzenta Paneele + Profile GmbH v. Unilin Flooring N.C. LLC*, 464 F. Supp. 2d 481, 486-87 (D. Md. 2006) (where complaint was changed to add new claims about one patent, defendant was required to seek leave to assert a new counterclaim of inequitable conduct about a second patent).[7]  Given the universe of possible counterclaims, this may be a challenging task.  *See* Fed. R. Civ. P. 13(b) (allowing any claim to be asserted as a counterclaim).  Here, for example, where the complaint alleges claims of trademark infringement based on a particular product and the new counterclaims allege claims of false advertising concerning that same product, it is unclear whether the counterclaims are a "response" to the claims in the complaint, or something different.

It appears that the better approach is to simply apply the Rule 15 standard equally to amended complaints and amended (or new) counterclaims.[8]  That approach appears to require the least contortion of the language of Rule 15(a), and is the most consistent with its purpose.  A new or different counterclaim asserted after an amendment of the complaint is a "pleading" governed by Rule 15(a), but does not fall into either category of 15(a)(1).  It therefore must fall under Rule 15(a)(2), which states that "the court's leave" (or the opponent's consent) is required "[i]n all other cases" before amending a pleading.  Fed. R. Civ. P. 15(a)(2).  Using this approach also has practical benefits.  It would prevent a party from asserting new counterclaims that are

---

[7] Other courts applying the "moderate" approach have allowed counterclaimants to assert any counterclaims if the plaintiff amends the complaint to change the scope or theory of the case.  *See, e.g.*, *Hydro Engineering, Inc. v. Petter Investments, Inc.*, 2013 WL 1194732, at *4-5 (D. Utah Mar. 22, 2013) (where amended complaint expanded scope and theory of the case, newly asserted counterclaims could further expand the scope and theory of the case).  This approach seems much like the "permissive" approach in that it also circumvents the requirements of Rule 15 by allowing the counterclaimant to add completely unrelated counterclaims or ones that could have been asserted earlier without leave.

[8] There is no obvious reason why leave of court would be necessary under any circumstances to file a simple answer (that is, one that does not include counterclaims) in response to an amended complaint, or to re-assert a counterclaim identical to one that was asserted in response to the original complaint.  *See* Fed. R. Civ. P. 15(a)(3).

made in bad faith, cause undue delay or prejudice, are futile, or abuse the legal process in some

other way, and also has the virtues of simplicity and ease of application.[9]

Here, defendants asserted new counterclaims without seeking leave of court, and plaintiff

has moved to strike those counterclaims. Under the circumstances, and because the controlling

law is far from clear, defendants' counterclaims will be treated as motions to amend the answers

to add new counterclaims under Rule 15(a)(2). Under Rule 15(a)(2), "[t]he court should freely

give leave [to amend] when justice so requires." *Id.* "Grounds for denial include 'undue delay,

bad faith or dilatory motive . . . repeated failure to cure deficiencies by amendments previously

allowed, undue prejudice to the opposing party . . . [and] futility of amendment." *ACA Financial*

*Guaranty Corp. v. Advest, Inc.*, 512 F.3d 46, 56 (1st Cir. 2008) (quoting *Foman v. Davis*, 371

U.S. 178, 182 (1962) (internal alterations in original)).

**B.**     **Substantive Analysis**

**1.**     **Declaratory-Judgment Counterclaims**

Defendants' first two counterclaims request declaratory judgments that the '865 patent be

declared invalid and that plaintiff should be barred from enforcing the '865 patent due to its

inequitable conduct. The Declaratory Judgment Act, 28 U.S.C. § 2201, provides that a claim

may be brought to resolve an "actual controversy" between interested parties. 28 U.S.C. §

---

[9] Rule 15 applies regardless of whether the counterclaim is compulsory or permissive. *See* Charles A. Wright & Arthur R. Miller, 6 Fed. Prac. & Proc. Civ. § 1430 ("Even leave to amend to file a compulsory counterclaim may be denied, however, if the delay in pleading the counterclaim is deemed prejudicial."). It is certainly arguable that a defendant should, in fairness, have the right to add counterclaims that have become compulsory because of amendments made to a complaint. *See* 3-15 Moore's Federal Practice - Civil § 15.17[6] (suggesting that "when a plaintiff's amended complaint changes the theory of the case, it would be inequitable to require leave of court before the defendant could respond with appropriate counterclaims."). The Court need not decide that issue here. The third amended complaint did not change the theory or scope of the case, and therefore did not make any previously permissive counterclaims compulsory; instead, it merely added additional allegedly infringing helmets introduced by defendants after the inception of the case.

2201(a). "The declaratory judgment plaintiff bears the burden of showing the existence of an 'actual controversy,' that is, any controversy over which there is Article III jurisdiction." *Organic Seed Growers and Trade Ass'n v. Monsanto Co.*, 718 F.3d 1350, 1355-56 (Fed. Cir. 2013) (internal quotations and citations omitted).[10]

Plaintiff contends that there is no "actual controversy" because it has disclaimed the '865 patent. Under 35 U.S.C. § 253, a patentee "may, on payment of the fee required by law, make disclaimer of any complete claim, stating therein the extent of his interest in such patent. Such disclaimer shall be in writing, and recorded in the Patent and Trademark Office . . . ." 25 U.S.C. § 253(a). "Disclaiming particular claims under § 253 effectively eliminates those claims from the original patent. . . . [U]pon entry of a disclaimer . . . we treat the patent as though the disclaimed claim(s) had never existed." *Genetics Inst., LLC v. Novartis Vaccines and Diagnostics, Inc.*, 655 F.3d 1291, 1299 (Fed. Cir. 2011) (internal quotations and alterations omitted). As a result, "[a] declaratory judgment action relating to the enforceability of a disclaimed patent is moot." *Jacobsen v. Katzer*, 609 F. Supp. 2d 925, 930 (N.D. Cal. 2009).

On April 11, 2014, plaintiff filed a disclaimer of the '865 patent. The PTO accepted the disclaimer, publishing it on May 13, 2014. At oral argument, defendants conceded that the declaratory-judgment claims as to the validity and enforceability of the '865 patent are mooted by the disclaimer. Accordingly, the proposed counterclaim will be disallowed, and plaintiff's motion to strike will be granted, as to the declaratory-judgment claims.

---

[10] Federal Circuit case law controls declaratory-judgment claims brought to challenge the validity and enforceability of a patent. *See Jacobsen v. Katzer*, 535 F.3d 1373, 1377 (Fed. Cir. 2008).

## 2. **False Advertising Counterclaims**

### a. **Futility**

All defendants have brought false-advertising counterclaims under the Lanham Act, 15 U.S.C. § 1125(a), against plaintiff in their answers to the third amended complaint. Plaintiff first contends that the counterclaims for false advertising should be disallowed (and struck) on the ground of futility. "A request for leave to amend filed before discovery is complete and before a motion for summary judgment has been filed is 'gauged by reference to the liberal criteria of Federal Rule of Civil Procedure 12(b)(6).'" *Juarez v. Select Portfolio Servicing, Inc.*, 708 F.3d 269, 276 (1st Cir. 2013) (quoting *Hatch v. Dep't for Children*, 274 F.3d 12, 19 (1st Cir. 2001)). Under that standard, the Court "must assume the truth of all well-plead[ed] facts and give plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a 12(b)(6) motion, a counterclaim must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). That is, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations . . . are true (even if doubtful in fact)." *Id.* at 555 (citations omitted).

To state a claim for false advertising under the Lanham Act, a complaint must allege as follows:

> (1) the defendant made a false or misleading description of fact or representation of fact in a commercial advertisement about his own or another's product; (2) the misrepresentation is material, in that it is likely to influence the purchasing decision; (3) the misrepresentation actually deceives or has the tendency to deceive a substantial segment of its audience; (4) the defendant placed the false or misleading statement in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the misrepresentation, either by direct diversion of sales or by a lessening of goodwill associated with its products.

*Cashmere & Camel Hair Mfrs. Inst. v. Saks Fifth Ave.*, 284 F.3d 302, 310-11 (1st Cir. 2002).
There is no dispute as to the second, third, and fourth elements; only the first and fifth are at
issue.

### i.    False or Misleading Description of Fact

Defendants allege that plaintiff made two categories of false statements in its advertising.
First, defendants, except for Burton, allege that plaintiff made false statements when advertising
that its helmets were the "first visor helmet offering a protective visor cover in the front." (*E.g.,*
Vans Countercl. at 19 ¶ 57). Plaintiff contends that these statements were non-actionable
puffery. "Where a claim is merely 'exaggerated advertising, blustering, and boasting upon
which no reasonable buyer would rely,' it may be un-actionable puffery." *F.T.C. v. Direct
Marketing Concepts, Inc.*, 624 F.3d 1, 11 (1st Cir. 2010) (quoting *Clorox Co. Puerto Rico v.
Proctor & Gamble Comm. Co.*, 228 F.3d 24, 38 (1st Cir. 2000)). Claims that are "specific and
measurable," and "claims that may be literally true or false are not puffery, and may be the
subject of deceptive advertising claims." *Id.* at 11-12.

After review of the statements alleged in the counterclaims and their attachments, the
Court agrees that, standing alone, the claims that plaintiff's helmets are the "original" or the
"first functional visor lid" are puffery. Those claims are not specific and measurable; rather,
they are merely "exaggerated advertising or unspecified boasting, characterized by vague and
subjective statements, upon which no reasonable buyer would rely." *DeSena v. Beekley Corp.*,
729 F. Supp. 2d 375, 392 (D. Me. 2010) (internal quotations omitted). *Compare Direct
Marketing Concepts*, 624 F.3d at 11-12 (advertising not puffery where "claims included definite
statements that coral calcium cures cancer, autoimmune diseases, and pain by rendering acidic

bodies more alkaline") *with Butcher Co., Inc. v. Bouthot*, 2001 WL 263313, at *1 (D. Me. Mar. 16, 2001) (claims that product was "better" or "comparable" to competing products were puffery), *and Evans v. Taco Bell Corp.*, 2005 WL 2333841 at *12 n.19 (D.N.H. Sep. 23, 2005) ("[G]eneral claims to superiority, known as 'puffery,' do not amount to actionable representations."). Plaintiff's motion to strike will be granted as to the portions of the Lanham Act claims based purely on puffery.

Second, defendants allege that plaintiff falsely stated in its advertising that its helmets were covered by the '865 patent. They contend that by advertising that its helmets were patented and implying that its competitor's helmets were imitations, plaintiff violated the Lanham Act. Plaintiff contends that its statements regarding the '865 patent were not false or misleading because the patent was in fact issued and patents are presumed to be valid. It further contends that defendants must allege that it accused *them* of infringing on the patent to state a claim under the Lanham Act.

Patents do carry a statutory presumption of validity. *See* 35 U.S.C. § 282(a). That presumption, however, can be overcome when alleging a claim for unfair competition under the Lanham Act. As the Federal Circuit has explained:

> To prevail on an unfair-competition claim under . . . the Lanham Act stemming from a patentee's marketplace activity in support of his patent, the claimant must first establish that the activity was undertaken in bad faith. . . . Although bad faith in this context has both objective and subjective elements, the former is a threshold requirement: a bad faith standard cannot be satisfied in the absence of a showing that the claims asserted were objectively baseless, meaning no reasonable litigant could realistically expect to prevail in a dispute over infringement of the patent.

*Judkins v. HT Window Fashion Corp.*, 529 F.3d 1334, 1338-39 (Fed. Cir. 2008) (internal quotations, citations, and alterations omitted). "Exactly what constitutes bad faith remains to be

determined on a case by case basis.  Obviously, if the patentee knows that the patent is invalid . . . yet represents to the marketplace that a competitor is infringing the patent, a clear case of bad faith representation is made out."  *Zenith Electronics Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1354 (Fed. Cir. 1999).[11]

The counterclaims allege that plaintiff first advertised and sold the "Baker" helmet in December 2009, and that Jonathan Baker applied for the '865 patent on January 19, 2007.  The counterclaims further allege that the PTO was not informed of this information during the patent application process.  Under the version of 35 U.S.C. § 102 in effect in 2007, a person was not entitled to a patent if "the invention was . . . in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States."  35 U.S.C. § 102(b) (2000).[12]  Assuming the allegations in the counterclaims are true, the '865 patent was subject to a challenge for invalidity when it was issued because plaintiff had advertised and sold the "Baker" helmet to the public more than a year before the application for the patent was filed.

The counterclaims further allege that plaintiff knew that the '865 patent was invalid when it made statements in its advertising that the patent covered the "Baker" helmet.  Again assuming the allegations in the counterclaims are true, plaintiff made those statements in bad faith because it could not have reasonably believed that the '865 patent was valid.  *See Golan v. Pingel Enter., Inc.*, 310 F.3d 1360, 1372 (Fed. Cir. 2002) ("A party that knowingly asserts an . . .

---

[11] Defendants cannot bring Lanham Act claims against plaintiff for bringing lawsuits against them for violating the '865 patent.  *See Zenith*, 182 F.3d at 1349 ("[T]he initiation of an infringement suit is clearly not covered by the text of § 43(a) [of the Lanham Act] . . . .").

[12] Section 102 was amended in 2011, and now states that a person is not entitled to a patent if "the claimed invention was . . . in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention."  35 U.S.C. § 102(a)(1) (2011).  Because the application for the '865 patent was filed in 2007, the previous version of the statute controls.

unenforceable . . . patent results in a clear case of bad faith.").

Plaintiff also contends that statements made in the marketplace are only actionable when they directly refer to a competitor or a competitor's products. It contends that the counterclaims are deficient because they do not allege that plaintiff's advertising explicitly stated that any of defendants' products infringed the '865 patent. However, the counterclaims allege that plaintiff characterized competing helmets as imitations, and did so in the same marketing materials that included references to the '865 patent. For example, one advertisement includes, on the same page, both a reproduction of the first page of the '865 patent and the statement, "Every single brand in the market now has a brim, but your customer wants the original!" (Easton-Bell Countercl., Ex. 7).

The counterclaims further allege that these statements, in combination with each other, would reasonably cause consumers to believe that competing helmets infringed the patent. Those claims are thin, at best. Nonetheless, the allegations are sufficient, when combined with plaintiff's claims that its helmets were the "first" with the disputed design, to state a claim under the Lanham Act, at least for the purposes surviving a motion to dismiss. *See Sandoz Pharm. Corp. v. Richardson-Vicks, Inc.*, 902 F.2d 222, 227 (3d Cir. 1990) ("[T]he Lanham Act encompasses more than blatant falsehoods. It embraces innuendo, indirect intimations, and ambiguous suggestions evidenced by the consuming public's misapprehension of the hard facts underlying an advertisement.") (quoting *Procter & Gamble Co. v. Chesebrough-Pond's, Inc.*, 747 F.2d 114, 118-19 (2d Cir. 1988)). Whether the claims can survive in later stages of

litigation is a question for another day.[13]

ii. **Injury**

Plaintiff also contends that the counterclaims fail to allege injury. It contends that under *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014), a counterclaim must allege proximate cause to state a claim of false advertising under the Lanham Act.

In *Lexmark*, the Supreme Court held "that to come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." 134 S. Ct. at 1390. *Lexmark* also held "that a plaintiff suing under § 1125(a) ordinarily must show economic or reputational injury flowing directly from the deception wrought by defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 1391. That requirement bars "suits for alleged harm that is 'too remote' from the defendant's unlawful conduct," which is "ordinarily the case if the harm is purely derivative of 'misfortunes visited upon a third person by the defendant's acts.'" *Id.* at 1390 (quoting *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 268-69 (1992)).

The counterclaims here satisfy the *Lexmark* requirements. The counterclaims allege that plaintiff's false advertising deceived customers, which resulted in increased sales for plaintiff and decreased sales for defendants. Assuming those allegations are true, defendants suffered harm directly caused by plaintiff's false advertising. The counterclaims therefore allege

---

[13] It appears that plaintiff did not own the '865 patent at the time it advertised its helmets, making any claim that they owned the patent that covered the helmets false. (*See* Assignment (retroactively assigning plaintiff the '865 patent on April 8, 2014)). The counterclaims, however, do not allege that plaintiff made false statements in claiming to own the '865 patent. (*See, e.g.*, Easton-Bell Countercl., Docket No. 165, at 12 ¶ 8 ("Bern is the owner by assignment of the '865 patent. Bern has owned the '865 patent . . . since at least the time the application was filed on January 19, 2007.")).

sufficient facts to state a claim for false advertising under the Lanham Act.[14]

## b.     Undue Delay and Unfair Prejudice

Plaintiff contends that the counterclaims should be struck because the failure to add them earlier constitutes undue delay and would result in unfair prejudice. First, it contends that a September 25, 2013 letter from defendant Smith to plaintiff shows that Smith knew of its false advertising counterclaim months before it amended its answer to include that counterclaim. Defendants contend that they did not know until they received a document disclosure from plaintiff in February 2014 that plaintiff had known the '865 patent was invalid from its inception. They contend that without that key document, they did not have a basis for alleging bad faith, which is a required element of a false advertising claim based on statements regarding patents.

As the court stated in *Refuse Fuels, Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa.*, 139 F.R.D. 576 (D. Mass. 1991):

> When an argument is made that a claim should have been brought at an earlier point in time, it must be borne in mind that any such claims cannot be brought unless the standards of Rule 11, Fed. R. Civ. P., are met. There is no question that any assertion of an affirmative defense or a counterclaim . . . would be subject to the provisions of that rule. In these circumstances, it seems unreasonable to second-guess the judgment of defendants' counsel that they did not have a sufficient basis to assert the . . . counterclaims until after some discovery which occurred after the time within which the counterclaims could have been asserted in response to earlier pleadings.

139 F.R.D. at 578-79. Although defendants may have been aware that they could assert a false-advertising counterclaim at some earlier point, they claim to have had no knowledge of plaintiff's alleged bad faith until the disclosure in February 2014. They filed their counterclaims on March 24 of that year. While the Court certainly has doubts as to the timing and purpose of

---

[14] Plaintiff also contends that the common-law unfair-competition and Chapter 93A claims should be dismissed. Plaintiff's contentions regarding those claims are essentially identical to those regarding the false-advertising claims, and suffer from the same infirmities.

the counterclaims, it declines to strike the counterclaims on the ground of undue delay.

Second, plaintiff contends that the amount of additional discovery in this case would delay the case and unduly prejudice it. It has provided several categories of discovery that it believes is necessary for the counterclaims, including (1) consumer-survey data on whether the statements are false or misleading; (2) whether the allegedly false statements are material; (3) whether any of the allegedly false statements caused customers to buy plaintiff's products instead of those of defendants; and (4) what damages defendants suffered from the allegedly false statements. Defendants contend that evidence of materiality and damages is not necessary in cases where the alleged false advertising is literally false.

When requesting injunctive relief for false advertising, "[i]f the advertisement is literally false, the court may grant relief without considering evidence of consumer reaction." *Clorox*, 228 F.3d at 33. However, there is "a difference in the burdens of proof between injunctive relief claims and monetary damages under the Lanham Act. . . . [W]hereas a showing that the defendant's activities are likely to cause confusion or to deceive customers is sufficient to warrant injunctive relief, a plaintiff seeking damages must show actual harm to its business." *Cashmere*, 284 F.3d at 311. A showing that a statement is literally false creates a presumption that consumers are confused, but that does not mean that a Lanham Act defendant is not entitled to discovery to rebut that presumption. *See id.* at 315 (finding litigant satisfied its burden of demonstrating consumer deception based on the presumption of confusion arising from literal falsity "and defendants' failure to present evidence to rebut it").

Even if proving literal falsity did relieve defendants from having to prove their damages, they would still need to prove that the false statements were material. "[E]ven when a statement

is literally false or has been made with the intent to deceive, materiality must be demonstrated in order to show that the misrepresentation had some influence on customers." *Id.* at 312 n.10. Evidence must be presented to show materiality, and plaintiff is entitled to discovery so that it can dispute that evidence. *Cf. id.* at 312-13 (describing evidence involving literally false statements that showed materiality).

Plaintiff will therefore suffer some prejudice if the counterclaims are allowed because some discovery would have to be taken, delaying the resolution of the case. That prejudice, however, must be balanced against the purposes of Rule 13(a). "The purpose of Rule 13(a) is 'to prevent multiplicity of actions and to achieve resolution in a single lawsuit of all disputes arising out of common matters.'" *Carteret Sav. & Loan Ass'n v. Jackson*, 812 F.2d 36, 38 (1st Cir. 1987) (quoting *Southern Construction Co. v. Pickard*, 371 U.S. 57, 60 (1962)); *see also* Wright & Miller, 6 Fed. Prac. & Proc. Civ. § 1403 ("Under Rule 13 the court has broad discretion to allow claims to be joined in order to expedite the resolution of all the controversies between the parties in one suit."). While some discovery might have to be taken on an expedited basis if the counterclaims are allowed, much of the discovery on those counterclaims has already been done in this case. It would be a waste of resources for both the judicial system and the litigants to require defendants to file new actions to pursue their false-advertising claims. The Court will therefore not strike the Lanham Act, common-law, and Chapter 93A counterclaims in their entirety.

## IV.     **Motion to Sever**

Finally, plaintiff has moved to sever the counterclaims under Fed. R. Civ. P. 21. In general, "[a] party asserting a claim, counterclaim crossclaim, or third-party claim may join, as

independent or alternative claims, as many claims as it has against an opposing party."  Fed. R. Civ. P. 18(a).  Under Rule 21, "[t]he court may . . . sever any claim against a party."  "Questions of severance are addressed to the broad discretion of the district court."  Wright & Miller, 7 Fed. Prac. & Proc. Civ. § 1689.

Defendants contend that there is no reason to sever the counterclaims in this case because no further discovery is necessary.  Plaintiff contends that it will be prejudiced if the counterclaims are not severed because they require further discovery and will delay trial on its own claims.

There appears to be some discovery that is reasonably necessary to litigate the counterclaims.  The counterclaims also involve completely different legal issues than plaintiff's trade-dress claims, and may be appealable to the Federal Circuit instead of the First Circuit.  *See* Joe Matal, *A Guide to the Legislative History of the America Invents Act:  Part II of II*, 21 Fed. Cir. B.J. 539, 539 (2012) (citing H.R. Rep. No. 112-98, at 81 (2011), 2011 U.S.C.C.A.N. 67) ("Section 19 of the AIA, at subsections (a) through (c), . . . extend the Federal Circuit's appellate jurisdiction to compulsory patent . . . counterclaims.").

Those questions, however, are somewhat abstract at this point.  The parties have not specifically outlined what discovery is necessary or how quickly the discovery can be completed. It may also be more appropriate to try the counterclaims separately under Rule 42(b) rather than sever them completely under Rule 21.  *See Acevedo-Garcia v. Monroig*, 351 F.3d 547, 558-59 (1st Cir. 2003) (describing difference between severance under Rule 21 and separate trials under Rule 42(b)).  Plaintiff's motion to sever will therefore be denied without prejudice as to its renewal at a future point.

**V.**      <u>**Conclusion**</u>

For the foregoing reasons, plaintiff's motion to strike is GRANTED as to the declaratory judgment act counterclaims; GRANTED as to the Lanham Act, common-law unfair competition, and Chapter 93A counterclaims that are based on puffery; and otherwise DENIED.  Plaintiff's motion to sever defendants' counterclaims is DENIED without prejudice as to its renewal.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated:  June 12, 2014